IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Lee Crum, Sr.,                                  :

     Plaintiff                            :        Case No.  2:04-cv-249

     v.                                   :        Judge Graham

Reginald Wilkinson, et al.,                     :        Magistrate Judge Abel

     Defendants                           :


**Order**

Plaintiff Lee Crum, Sr., a prisoner at the Madison Correctional Institution ("MCI"), brings this action under 42 U.S.C. § 1983 and 5 U.S.C. § 551 alleging that defendants Reginald Wilkinson, Cheryl Jorgensen-Martinez, Larry Yoder, Robert Whitten, Alan Lazaroff, Melody Lewis, Virginia Workman, Major Paul Guyton, Lt. Willingham, J.  Baird, S.  Perry, and M.  O'Day have violated his rights under the Privileges and Immunities Clause under Article 4, the First Amendment, the Due Process Clause of the Fifth and Fourteenth Amendments, and the Eighth Amendment of the United States Constitution.[1]

---

[1] Defendants Larry Yoder, Melody Lewis, Reginald Wilkinson, Major Guyton, Cheryl Jorgensen-Martinez, Robert Whitten and Alan Lazaroff were dismissed from this action.  *See* November 29, 2004, Order (doc.  28).  Plaintiff's claims arising under the Administrative Procedure Act and the Eighth Amendment were also dismissed.

1

This matter is before the Court on plaintiff Lee Crum's September 2, 2005, objections to the Magistrate Judge's Report and Recommendation (doc. 47). As required by 28 U.S.C. §636(c), the Court has made a *de novo* review of those portions of the Report and Recommendation to which the parties specifically object. Upon *de novo* review, the Court **OVERRULES** plaintiff's objections.

I.    **Background**

Plaintiff testified on behalf of another inmate before the Rules Infraction Board ("RIB") on April 28, 2003 regarding an allegedly false conduct report issued by defendant Officer O'Day. (Compl. ¶¶ 17-18.) As a result of his testimony, the complaint alleges that Officer O'Day began to harass, threaten, and verbally abuse plaintiff. (*Id.* at ¶ 20.) The complaint alleges that on June 8, 2003, Officer O'Day called Crum to his desk to ask him if he was having a dispute with another inmate.   (*Id.* at ¶ 21.) Crum responded that the dispute had been resolved. (*Id.*.) The complaint further alleges that Officer O'Day began to yell loudly enough for other inmates to overhear that plaintiff was a snitch. (*Id.* at ¶ 22.)

The complaint alleges that Crum submitted an informal complaint to the shift captain office regarding O'Day's conduct and a kite to defendant Virginia Workman, the Inspector of Institutional Services.   (*Id.* at ¶¶ 23-24.) Plaintiff believes that O'Day called him a snitch in order to provoke other inmates into assaulting him. (*Id.* at ¶ 28.) Plaintiff appealed the grievance disposition to the

2

Office of the Chief Inspector.   (*Id*. at ¶ 30.)  The complaint alleges that Larry Yoder, Acting Assistant Chief Inspector, rubber-stamped the affirmation of the disposition of the grievance.   (*Id*. at ¶ 31.)

The complaint alleges that O'Day further retaliated against Crum by filing a false conduct report.  (*Id*. at ¶ 32.)  According to the complaint, O'Day told Crum and other inmates not to stand on the porch of the housing unit.  (*Id*. at ¶ 34.)  O'Day then had Officer Westmoreland send plaintiff to see him.  (*Id*. at ¶ 35.)  Officer O'Day requested Crum's badge. Fearing for his safety, plaintiff tossed his badge to O'Day rather than stand close enough to him to hand it to him directly.  (*Id*. at ¶ 36.)  The complaint alleges that following this incident O'Day telephoned the shift captain to have Crum taken to segregation and falsified a conduct report.  (*Id*. at ¶¶ 36-37.)

The complaint alleges that the members of the RIB panel were aware that O'Day falsified conduct reports, but they still found plaintiff guilty and imposed punishment. (*Id*. at ¶ 40.)  Plaintiff filed an appeal to Managing Officer Melody Lewis, who dismissed it as untimely.  (*Id*. at ¶¶ 41-42.)  Plaintiff then filed an appeal to defendant Reginald Wilkinson, who affirmed the conviction. (*Id*. at ¶¶ 43-44.)  Plaintiff also filed a complaint with defendant Major Guyton citing O'Day's inappropriate supervision. (*Id*. at ¶ 45.)

The complaint alleges that defendant Workman failed to address the facts of how the false conduct report came into existence.  (*Id*. at ¶ 48.)

3

Defendant Workman found that O'Day had not retaliated for plaintiff's testimony because the alleged incident of retaliation did not occur until five months later.  (*Id*. at ¶ 51.)  The complaint alleges that the Acting Assistant Chief Inspector, defendant Robert Whitten simply went along with what the Inspector had found.  (*Id*. at ¶ 57.)  Plaintiff filed a grievance against defendant Workman, and defendant Jorgensen-Martinez dismissed this grievance.  (*Id*. at ¶¶ 58 & 60.)

## II.    Arguments of the Parties

### A.    Plaintiff

Crum argues that the Magistrate Judge erred by concluding that there was "some evidence" supporting the disciplinary conviction based on a report known to be falsified by the corrections officers.  Plaintiff maintains that he established inconsistencies in O'Day's report.  Specifically, he contends that O'Day alleged that Crum refused to give him his I.D. badge and then threw the badge at him.

Plaintiff also argues that the Magistrate Judge misconstrued the holding in *Thaddeus-X v. Blatter*, 175 F. 3d 378, 394 (6th Cir. 1999) by failing to recognize that when motive is an element of the alleged constitutional wrong, a subjective inquiry cannot be avoided.  Plaintiff further argues that the deferential standard of "some evidence" does not apply to a prison guard's

initial accusation of a rule violation where the guard's accusations were alleged and shown to be retaliatory and false.

Crum also argues that the Magistrate Judge erred by applying the standard of temporal proximity to consider whether there was a causal connection between the protected conduct and the retaliatory action.  Crum also argues that if the temporal proximity was appropriately considered, the Magistrate Judge misapplied the facts because the alleged retaliatory action occurred just five days after the Chief Inspector affirmed the disposition of the grievance by defendant Workman.

Crum asserts that the Magistrate Judge erred by finding that plaintiff did not establish a procedural due process violation.  Crum maintains that he established that he was denied an impartial tribunal during the disciplinary hearing, appeals, and grievance process.  He contends that a false prison misconduct report violates due process regardless of the fairness of the post-deprivation proceedings.  Plaintiff also argues that the Magistrate Judge erred by holding that the issuance of an intentionally false prison disciplinary misconduct report does not violate substantive due process by implicating liberty interests pursuant to Ohio Administrate Code §§ 5120-9-04(A)(2) & (3) and 5120-9-31(H).  Plaintiff argues that he presented enough evidence that he was issued an intentionally false prison disciplinary conduct report and that the post-

deprivation proceedings were unfair to survive defendants' motion for summary judgment.

Crum also argues that the Magistrate Judge erred by failing to consider whether or not O'Day labeling him as a snitch violated the First Amendment although it was not a violation of the Eighth Amendment.  Finally, plaintiff argues that the Magistrate Judge erred by not finding that defendants were liable under the theory of respondeat superior despite presenting overwhelming evidence that the supervisory defendants knowingly condoned, authorized, and acquiesced in O'Day's misconduct.

### B.    Defendants

Defendants argue that Crum is attempting re-litigate the RIB hearing. Defendants maintain that plaintiff received a fair hearing and obtained all of the process that was due.  The RIB relied on the officer's written conduct report and plaintiff's testimony, which constitutes "some evidence."

### III.    Summary Judgment

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)

7

(footnote omitted).  Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc*., 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)).  As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him."

*First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259
(1968)(footnote omitted).

**IV.    Discussion**

The Magistrate Judge correctly noted that a claim for retaliation has three
elements: the plaintiff engaged in protected conduct, the defendant took an
adverse action against the plaintiff, and this adverse action was taken because
of the protected conduct. *Thaddeus-X, et. al. v. Blatter*, 175 F.3d 378, 394 (6th
Cir. 1999).  Crum easily satisfies the first element because a  prisoner has a
constitutional right to file grievances against prison officials. *Smith v. Campbell*,
250 F.3d 1032, 1037 (2001) (citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.
1996). The second element of a retaliation claim is a showing that an adverse
action was taken.  *Thaddeus-X*, 175 F.3d at 396.  Defendants do not challenge
that O'Day's conduct report constitutes an adverse action. Crum also argues
that the Magistrate Judge erred by failing to consider whether or not O'Day
labeling him as a snitch violated the First Amendment.  Labeling plaintiff a snitch
in the presence of other inmates is certainly likely to deter a person of ordinary
firmness from exercising the right at stake.  *Id*.

The Magistrate Judge found that the plaintiff failed to show that the
decision was motivated, at least in part, by the plaintiff's protected activity.
*Thaddeus-X*, 175 F.3d at 399.  Plaintiff maintains that he demonstrated that his
protected conduct was a motivating factor for O'Day to issue a conduct report

9

because other inmates had successfully challenged some charges filed by O'Day against them.  The Magistrate Judge concluded that the fact that other inmates have been found not guilty of charges brought by O'Day in the past does not show that O'Day retaliated against Crum in this instance.

Circumstantial evidence, such as the timing of events, may show motivation. *See Thaddeus-X*, 175 F.3d at 399.  Crum argues that temporal proximity is not necessary to demonstrate motivation, and he is correct.  However, the Magistrate Judge did not require plaintiff to show temporal proximity; he simply considered whether the timing of events in these circumstances could be used by plaintiff to demonstrate motivation.  In this case, the elapse of time between Crum's testimony and the issuance of the misconduct report were not sufficiently close in time.

The only evidence offered by plaintiff that his protected conduct was a motivating factor for O'Day to issue a conduct report was the fact that Crum had testified against O'Day in an earlier proceeding and that other inmates had successfully challenged some charges filed by O'Day against them.  Although inferences drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion, there must be evidence on which the jury could reasonably find for the opposing party.  The fact that the RIB found other inmates not guilty of

10

charges made by O'Day in the past is simply too attenuated to survive defendants' motion for summary judgment.

However, the Magistrate Judge did not consider whether or not the incident where O'Day allegedly called Crum a snitch in front of other inmates was sufficiently close in time to Crum's testimony to demonstrate causation. Plaintiff testified before the RIB on April 28, 2003 regarding an allegedly false conduct report issued by O'Day, and the complaint further alleges that O'Day began to yell that plaintiff was a snitch in the presence of other inmates on June 8, 2003.  (Compl.  ¶¶ 17-18 & 22.)  Although timing may be relevant to causation in retaliation cases, under these circumstances, the elapse of forty-one days cannot be considered be sufficiently close in time to demonstrate causation. Here, temporal proximity alone does not suffice to demonstrate that O'Day's motive was retaliatory in nature.  Officer O'Day worked at the housing unit next to the unit where plaintiff resides.  Had O'Day desired to retaliate against plaintiff for his testimony before the RIB board by calling him a snitch in front of other inmates, he would have had ample time before June 8, 2003, to do so.

Those cases that have found temporal proximity to demonstrate causation have also typically relied on additional evidence from which causation could be inferred.  *See, e.g.*, *Kounelis v. Sherrer*, – F.  Supp.  2d –, 2005 WL 2675593, at *4 (D. N.J. 2005) (finding that plaintiff demonstrated a suggestive temporal proximity when only 25 days had elapsed and charges brought

11

against plaintiff were dismissed on two other occasions) *and Rauser v. Horn*, 241 F.3d 330, 334 (3rd Cir. 2001) (finding that plaintiff had demonstrated suggestive temporal proximity between his exercise of his rights"prior to January 1998" and his transfer on January 26, 1998, when on the eve of the transfer, he was threatened that if he continued to disrupt prison programs he would be punished with a denial of parole). *See also Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-274 (2001) (noting that the use of temporal proximity to demonstrate causation must be very close).

Procedural Due Process. Plaintiff relies on the Ninth Circuit decision in *Hines v. Gomez*, 108 F.3d 265 (9th Cir. 1997) for the proposition that the "some evidence" standard of *Superintendent v. Hill*, 472 U.S. 445 (1985) does not apply when a prisoner alleges that a correctional officer falsely accused him of violating a prison rule in retaliation for the prisoner's exercise of his constitutional rights. In *Hines*, the Ninth Circuit distinguished between a prison board's disciplinary decision and a guard's accusation of wrongdoing. "A prison board will base its disciplinary decision on its own credibility determinations and on independent evidence provided to the board." *Hines*, 108 F. 3d at 268. The Magistrate Judge did not apply the "some evidence" standard to O'Day's initial report of misconduct. Instead, the Magistrate Judge found that there was some evidence supporting the decision of the disciplinary board. This is the proper application of the law in this Circuit:

12

False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing. *See Cale v. Johnson,* 861 F.2d 943, 953 (6th Cir.1988) (Nelson, J., concurring). The general rule, as stated in *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986) provides that:

> [A] prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law.

Thus, where a prisoner is provided due process, no constitutional violation results from his being falsely accused of misconduct. Because [the prisoner] was provided a due process hearing for each charge of misconduct, his constitutional rights were not violated and he may not maintain a Section 1983 claim for the alleged false misconduct reports.

*Munson v. Burson*, 210 F.3d 372, 2000 WL 377038, at *4 (6th Cir. 2000).  A false

prison misconduct report does not violate due process when followed by fair

post-deprivation proceedings.

Crum further argues that there was no evidence supporting the decision

of the RIB when it found him guilty.  Crum maintains that the RIB did not base its

decision on his refusal to O'Day's order to be seated.  Instead, the RIB relied on

the misconduct report, which stated that Crum initially refused to give O'Day his

badge before giving the badge to O'Day. "[D]ue process in this context

requires only that there be some evidence to support the findings made in the

disciplinary hearing." *Superintendent, Massachusetts Correctional Institution,*

*Walpole v. Hill*, 472 U.S. 445, 457 (1985).  The RIB believed the statement of O'Day

in the conduct report that Crum refused an order and also relied on the

13

testimony of Crum, who acknowledged that he disobeyed a direct order to be seated.  *See* Defs.' Mot. for Summary Judgement, Exhs.  8 & 9.

Substantive Due Process. Plaintiff also argues that the Magistrate Judge erred by holding that the issuance of an intentionally false prison disciplinary misconduct report does not violate substantive due process by implicating liberty interests pursuant to Ohio Administrative Code §§ 5120-9-04(A)(2) & (3) and 5120-9-31(H).  Crum also asserts that the Magistrate Judge erred when he stated that the shocks the conscience test was the appropriate standard.

 Although the Magistrate Judge noted that the Sixth Circuit permitted an inmate to go forward with a claim with similar facts as alleged by Crum based on his general substantive due process rights, *see Cale v. Johnson*, 861 F.2d 943, 949-50 (6th Cir. 1988), the Sixth Circuit appears to have foreclosed substantive due process as a means for recovery under these factual circumstances.  *See Thaddeus X,* 175 F.3d at 387 *and Graham v. Connor*, 490 U.S. 386, 395 (1989)("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.")(internal quotation marks omitted).

Respondeat Superior. Section 1983 liability may not rest simply on a theory of respondeat superior. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Rather, a supervisor must have "either encouraged the specific incident of

14

misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. (quoting *Hays v. Jefferson County, Ky.*, 688 F.2d 869, 874 (6th. Cir. 1982). A mere failure to act is insufficient. *Id*.  The Magistrate Judge correctly found that plaintiff did not come forth with any evidence showing that Workman covered up O'Day's alleged conduct.

## V.    Conclusion

For the reasons stated above, the Court **OVERRULES** plaintiff's objections. For the reasons set out above, the Court holds that defendants' April 8, 2005, motion for summary judgment is meritorious; and therefore, it is GRANTED.  The Clerk of Court is DIRECTED to enter JUDGMENT for defendants.  This action is hereby DISMISSED.

It is so ORDERED.

s/James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE:  January 11, 2006

15